## NO. 13-2165

## UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

### VAUNIE K. BROWN

**Plaintiff-Appellant,**

**v.**

### CHESAPEAKE APPALACHIA, LLC

**Defendant-Appellee.**

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
Case No. 5:12-CV-00071
Judge Fredrick P. Stamp, Jr.

## BRIEF OF APPELLANT,
## VAUNIE K. BROWN

Carl A. Frankovitch, Esq.
M. Eric Frankovitch, Esq.
Michael G. Simon, Esq.
Kevin M. Pearl, Esq.
FRANKOVITCH, ANETAKIS,
COLANTONIO & SIMON
337 Penco Road
Weirton, WV 26062
Phone: (304) 723-4400
Fax: (304) 723-5892

*Counsel for Appellant, Vaunie K. Brown*

November 19, 2013

# TABLE OF CONTENTS

**Page**

STATEMENT REGARDING ORAL ARGUMENT……………………………..iii

TABLE OF AUTHORITIES………………………………………………....iv

JURISDICTIONAL STATEMENT……………………………………....1

STATEMENT OF THE ISSUES……………………………………………..1

STATEMENT OF THE CASE…………………………………………………2

STATEMENT OF FACTS……………………………………………………..7

SUMMARY OF THE ARGUMENT..…………………………………………10

STANDARD OF REVIEW……………………………………………………11

ARGUMENT………………………………………………………………...15

   I. THE DISTRICT COURT ERRED IN GRANTING SUMMARY
      JUDGMENT IN FAVOR OF CHESAPEAKE ON THE BASIS
      THAT CHESAPEAKE'S INTERPRETATION OF PARAGRAPH 19
      IS THE "MOST REASONABLE INTERPRETATION."……..................15

      A. The District Court applied an erroneous standard for granting
         summary judgment on a matter of contract interpretation……………15

      B. Paragraph 19 is ambiguous because it is susceptible of at least
         two reasonable interpretations…………………………………..…17

      C. The District Court's interpretation of Paragraph 19 creates an
         inconsistency on its face, and therefore, the sentence is ambiguous….28

  II. THE DISTRICT COURT ERRED IN REFUSING TO CONSIDER
      WHETHER CHESAPEAKE'S INTERPRETATION OF
      PARAGRAPH 19 CREATED AN UNCONSCIONABLE RESULT……32

i

A.  Paragraph 19 of the Lease, as Chesapeake seeks to apply it, is unconscionable and deceptive and therefore unenforceable as a matter of law…………………..………………………………..34

B.  Paragraph 19 of the Lease, as Chesapeake seeks to apply it, violates West Virginia public policy…………………………………38

III. THE EXTRINSIC EVIDENCE OVERWHELMINGLY FAVORS MS. BROWN'S INTERPRETATION OF PARAGRAPH 19……………39

IV. THE AMBIGUITIES CONTAINED IN PARAGRAPH 19 MUST BE CONSTRUED IN FAVOR OF MS. BROWN………………..42

CONCLUSION……………………………………………………………...44

CERTIFICATE OF COMPLIANCE...……………………………………46

CERTIFICATE OF SERVICE……………………………………………47

## STATEMENT REGARDING ORAL ARGUMENT

This appeal concerns the interpretation of an oil and gas lease and the manner in which such interpretation should be undertaken by trial courts. Due to the advent of hydraulic fracturing and the harvesting of oil and gas from shale layers previously inaccessible to oil and gas producers, disputes regarding the interpretation of oil and gas leases in West Virginia and throughout this Circuit are on the rise. Clear rules of interpretation are necessary for these disputes to be resolved in a consistent manner.

Additionally, the lease at issue is a form lease and its interpretation applies not solely to the Appellant landowner, but to other landowners throughout West Virginia. The legal issues presented in this appeal are of importance not only to the parties before this Court, but to landowners throughout West Virginia and the Fourth Circuit, and concern important individual property rights. Therefore, the Appellant respectfully requests that the Court schedule this case for oral argument.

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

− *Am. Fid. & Cas. Co. v. London & Edinburgh Ins. Co.*,
354 F.2d 214 (4th Cir. 1965). ……………………………………………12, 14

− *Amaral v. Saint Cloud Hosp.*,
598 N.W.2d 379 (Minn. 1999) ……………………………………………23-24

− *Ashland Oil, Inc. v. Donahue*,
159 W.Va. 463, 223 S.E.2d 433 (1976)……………………………………34

− *Atalla v. Abdul-Baki*,
976 F.2d 189 (4th Cir. 1992) ……………………………………………14

− *Atkinson Warehouse & Distribution, Inc. v. Ecolab Inc.*,
15 F. App'x 160 (4th Cir. 2001) ………………………………………...13

− *Bailey v. United States*,
516 U.S. 137, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995) …………………….20

− *Bear Brand Hosiery Co. v. Tights, Inc.*,
605 F.2d 723 (4th Cir. 1979) …………………………………………14-15, 42

− *Berry v. Humphreys*,
76 W. Va. 668, 86 S.E. 568 (1915) …………………………………………..22

− *Bettman v. Harness*,
42 W.Va. 433, 26 S.E. 271 (1896)……………………………………39, 43

− *Boggs v. Camden-Clark Memorial Hosp. Corp.*,
225 W.Va. 300, 693 S.E.2d 53 (W.Va. 2010)…………………………….43

− *Brown v. Genesis Healthcare Corp.*,
228 W.Va. 646, 724 S.E.2d 250 (2011)………………………………...34-35

– *Charlton v. Chevrolet Motor Co.*,
  115 W.Va. 25, 174 S.E. 570 (1934)…………………………………………..43

– *Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*,
  252 F.3d 707 (4th Cir.2001) …………………………………………………12

– *Dan Ryan Builders, Inc. v. Nelson*,
  2012 WL 5834590 (W.Va. November 15, 2012)…………………………..34

– *Davis v. Pletcher*,
  727 S.W.2d 29 (Tex.App.1987) …………………………………………...20

– *DBS, Inc. v. Selective Way Ins. Co.*,
  2:13CV312, 2013 WL 3729169 (E.D. Va. July 10, 2013) ………………...20

– *Dunbar Fraternal Order of Police, Lodge No. 119 v. City of Dunbar*,
  218 W. Va. 239, 624 S.E.2d 586 (2005)…………………………………...34

– *Eclipse Oil Company v. South Penn Oil Company*,
  47 W.Va. 84, 34 S.E. 923 (1899)…………………………………………..43

– *Energy Dev. Corp. v. Moss*,
  214 W. Va. 577, 591 S.E.2d 135 (2003) …………………………...14, 42-43

– *Fraternal Order of Police, Lodge No. 69 v. City of Fairmont*,
  196 W. Va. 97, 468 S.E.2d 712 1996) ……………………13, 15, 16, 22, 29

– *Freeman v. Quicken Loans, Inc.*,
  132 S. Ct. 2034, 182 L. Ed. 2d 955 (2012)………………………...…..........28

– *Goodman v. Resolution Trust Corp.*,
  7 F.3d 1123 (4th Cir.1993) ………………………………………..……13, 28, 30

– *Grayiel v. Appalachian Energy Partners, 2001-D, LLP*,
  2012 WL 5834932 (W.Va. November 15, 2012)…………………………..34

– *Hendricks v. Cent. Reserve Life Ins. Co.*,
  39 F.3d 507 (4th Cir.1994) ……………………………………………….......13

v

– *Jackson v. Kent,*
  106 W.Va. 37, 145 S.E. 572 (1928)………………………………………..43

– *Lee v. Lee*,
  228 W. Va. 483, 721 S.E.2d 53, (2011) …………………………...14, 17, 42

– *Loeffler v. Federal Supply Co.*,
  102 P.2d 862 (Okla. 1940)…..……………………….……………….30-31

– *Long v. United States*,
  199 F.2d 717 (4th Cir. 1952)………………………………………………..23

– *Marx v. Gen. Revenue Corp.*,
  133 S. Ct. 1166, 185 L. Ed. 2d 242 (2013) ………………………………..28

– *Mastrobuono v. Shearson Lehman Hutton, Inc.*,
  514 U.S. 52 (1995)……………………………………………………42-43, 44

– *Microsoft Corp. v. i4i Ltd. Partnership,*
  131 S. Ct. 2238, 180 L. Ed. 2d 131 (2011) ………………………………..28

– *Miller's Apple Valley Chevrolet Olds-Geo, Inc. v. Goodwin*,
  177 F.3d 232 (4th Cir. 1999) …………………………………………………20

– *Moody v. Smoot Advertising Co.,*
  98 W.Va. 261, 126 S.E. 919 (1925)………………………………………..43

– *Moore v. Johnson Serv. Co.,*
  158 W.Va. 808, 219 S.E.2d 315 (1975)……………………………………43

– *Nach v. Mendrell*,
  110 W. Va. 139, 157 S.E. 179 (1931)…………………………………..31-32

– *Nader v. Blair,*
  549 F.3d 953 (4th Cir. 2008)………………………………………………11

– *Palmer v. Ameribanq Mortgage Grp., LLC*,
  CIV.A. 05-2023, 2009 WL 1249292 (E.D. Pa. May 5, 2009)……………..33

− *Payless Shoesource, Inc. v. Travelers Companies, Inc.*,
   585 F.3d 1366 (10th Cir. 2009) ………………………………………..20-21

− *PBM Prods., LLC v. Mead Johnson & Co.*,
   639 F.3d 111 (4th Cir. 2011) …………………………………………………13

− *Phillips v. Raytheon Applied Signal Tech., Inc.*,
   CIV.A. ELH-11-3230, 2013 WL 5440802 (D. Md. Sept. 27, 2013)………33

− *Porto Rico Ry., Light & Power Co. v. Mor*,
   253 U.S. 345, 348 (1920) …………………………………………………….22

− *Quicken Loans, Inc. v. Brown*,
   2012 WL 5897495 (W.Va. November 21, 2012)………………………35-36

− *Robinson v. Shell Oil Co.*,
   519 U.S. 337, 117 S. Ct. 843, 136 L. Ed. 2d 808 (1997) …………………29

− *Seabulk Offshore, Ltd. v. Am. Home Assur. Co.*,
   377 F.3d 408 (4th Cir. 2004) …………………………………………..12-13

− *Shamblin v. Nationwide Mut. Ins. Co.*,
   175 W. Va. 337, 332 S.E.2d 639 (1985) …………………………………..16

− *Sheridan v. Nationwide Ret. Solutions, Inc.*,
   313 F. App'x 615 (4th Cir. 2009)...………………………...12-13, 14, 16, 17

− *United Fuel Gas Company v. Cabot*,
   96 W.Va. 387, 122 S.E. 922 (1924)………………………………………..43

− *United Woolen Mills Co. v. Honaker*,
   96 W.Va. 166, 122 S.E. 440 (1924) ………………………………19, 25, 26

− *W. Virginia Health Care Cost Review Auth. v. Boone Mem'l Hosp.*,
   196 W. Va. 326, 472 S.E.2d 411 (1996) …………………………………..29

− *Washington Metro. Area Transit Auth. v. Potomac Invest. Props., Inc.*,
   476 F.3d 231 (4th Cir.2007) …………………………………………………13

## Statutes

– 28 U.S.C. § 1291……………………………………………………….1

– 28 U.S.C. §1332………………………………………………………..1

## Rules

– Fed.R.Civ.P. 56(a)………………………………………………….4, 12

## Other Authorities

– Merriam-Webster Online Dictionary *available at* http://www.merriam-webster.com/dictionary/expiration…………………………………………30

– Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts § 20 (2012)……………………………….............22, 23, 24

– Sentence Diagramming, Glencoe/McGraw-Hill http://images.pcmac.org/SiSFiles/Schools/AL/MontgomeryPublic/ FloydMiddle/Uploads/DocumentsCategories/Documents/sentence% 20diagramming_1.pdf…………………………………………………...21

– The Free Online Dictionary *available at* http://www.thefreedisctionary.com/transitive+verb....................................21

## JURISDICTIONAL STATEMENT

The District Court had subject matter jurisdiction of this removed action pursuant to 28 U.S.C. § 1332 because there is diversity of citizenship between the parties and the amount in controversy exceeds $75,000.00. (Notice of Removal ¶¶ 7, 9; J.A., 11-12). The District Court entered a final Memorandum Opinion and Order on August 21, 2013. (Mem. Op. and Order, J.A., 419-36; Judgment, J.A., 67). Plaintiff filed a timely notice of appeal on September 19, 2013. (R. #58, Notice of Appeal, J.A., 437-38). This Court has appellate jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

1.     The District Court erred by utilizing an improper standard to grant summary judgment in favor of Chesapeake based on its reasoning that Ms. Brown's interpretation of Paragraph 19 is not the most reasonable interpretation.

2.     The District Court erred in refusing to consider whether Chesapeake's interpretation creates an unconscionable result and is void as against public policy.

3.     The District Court erred in denying as moot Plaintiff's Motion for Leave to file Supplemental Response in Opposition to Defendant's Motion for Summary Judgment.

## STATEMENT OF THE CASE

This action arises out of Chesapeake's unilateral attempt to extend an oil and gas lease entered into between Vaunie K. Brown, as lessor, and the predecessor in interest to Chesapeake Appalachia, LLC ("Chesapeake"), as lessee. Chesapeake's putative extension fails because the lease requires an agreement between the lessor and the lessee as to the terms by which Chesapeake may maintain a leasehold interest in the oil and gas. The lease was for a primary term of five (5) years and so long thereafter as oil and/or gas was produced on the premises in paying quantities. (Lease, ¶2, J.A., 32). In entering into the lease, the parties intended that Ms. Brown would be entitled to renegotiate the terms of the lease upon the expiration of the five (5) year primary term, provided that the premises were not producing oil or gas. (Brown Dep., 9:6-10, J.A., 233).

Despite the intention of the parties to the lease, after Chesapeake purchased the rights to the lease, it claimed that the lease empowers it to unilaterally extend the lease under the *identical* terms as the original lease for an additional five (5) years by tendering the *same* consideration paid five years earlier. Chesapeake bases its argument on language contained in paragraph 19 of the lease, which states:

> **Upon expiration of this lease and within sixty (60) days thereinafter, Lessor grants to Lessee an option to extend or renew under similar terms a like lease.**

(hereinafter "Paragraph 19")

2

On or about March 29, 2012, Chesapeake unilaterally filed a Notice of Extension of Oil and Gas Lease with the Clerk of the County Commission of Hancock County, West Virginia purporting to extend the Lease. (Answer ¶ 19, J.A., 43; Answer, Ex. 1, J.A., 53).

On April 20, 2012, the Appellant, Vaunie K. Brown, filed a class action lawsuit[1] in the Circuit Court of Hancock County, West Virginia, seeking a declaration that the oil and gas leases containing the above-quoted language in Paragraph 19 expired at the conclusion of the five (5) year primary term, and that title to the oil and gas underlying her real estate be quieted in her favor. (Complaint, J.A., 22-31). Ms. Brown also pled claims for slander of title, breach of the implied covenant of good faith and fair dealing, and violation of the West Virginia Consumer Credit and Protection Act. (Complaint, J.A., 28-30).

Citing the District Court's diversity jurisdiction, Chesapeake removed the case to the United States District Court for the Northern District of West Virginia on May 23, 2012. (Notice of Removal, J.A., 10-19). Following removal, Chesapeake partially answered the Complaint, and asserted a Counterclaim requesting declaratory judgment in its favor. (Answer, J.A., 40-51).

The parties subsequently stipulated to the dismissal of Ms. Brown's non-declaratory judgment claims (Counts III-V), and the District Court entered an order

---

[1] Class certification was not pursued and all class action allegations were dismissed without prejudice. (Judgment, J.A., 442).

3

dismissing those claims with prejudice pursuant to a Stipulation of Dismissal on June 11, 2012. (Order Dismissing Counts III, IV, and V, J.A., 54).

On December 21, 2013, Chesapeake submitted a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure arguing that Paragraph 19 empowered it to extend the lease an additional five (5) years under the same terms as the original lease. (Chesapeake Mot. for Summ. J., J.A., 55-74; Chesapeake Mem. in Supp., J.A., 75-96).

Ms. Brown opposed Chesapeake's motion, and filed a competing motion for summary judgment. (Brown Mot. for Summ. J., J.A., 97-98; Brown Mem. in Supp., J.A., 99-142). Ms. Brown based her opposition and request for judgment on the plain language of Paragraph 19 of the lease. Specifically, Ms. Brown asserted that Paragraph 19 provided Chesapeake with one option to maintain a leasehold on the Lessor's oil and gas. That option was to enter into a "like lease" "under similar terms" during the sixty (60) day period following the expiration of the lease. (Brown Mem. in Supp., J.A., 108). Ms. Brown argued in the alternative that Paragraph 19 was ambiguous, and because of its ambiguity, the District Court was required to construe the language against Chesapeake as the drafter. *Id.*

The parties responded to the competing motions on January 22, 2013. (Chesapeake Response, J.A.,143-208; Brown Response, J.A., 209-244). In support of its memorandum in opposition to Ms. Brown's Motion, Chesapeake attached the

4

Declaration of Mark A. Acree. (Acree Decl., J.A., 203-205) Mr. Acree is a former employee of Chesapeake's predecessor in interest. *Id.* In the self-serving affidavit, Mr. Acree testified as to the purported intent of the drafter of the lease. *Id.*

Ms. Brown's Response reiterated her reasonable interpretation of Paragraph 19 and further asserted that Chesapeake's interpretation is unreasonable and should not be adopted. (Brown Response, J.A., 209-26).

Ms. Brown also filed a motion to strike the Declaration of Mark A. Acree, as he was not disclosed as an individual with knowledge of facts and information pertaining to the Lease prior to Chesapeake's response to her motion for summary judgment. (Brown Mot. to Strike, J.A., 245-334). On February 18, 2013, Chesapeake filed a response to Ms. Brown's motion to strike, arguing that Chesapeake had not disclosed Acree because it did not believe his testimony to be relevant. (Chesapeake Resp. to Mot. to Strike, J.A., 328). Ms. Brown filed a reply in support of her motion to strike on February 25, 2013. (Brown Reply in Supp. of Mot. to Strike, J.A., 343-51).

On March 19, 2013, Ms. Brown moved for leave to supplement her response in opposition to Chesapeake's motion for summary judgment with documents that Chesapeake withheld during discovery and which were only discovered after the briefing of the competing motions for summary judgment. (Brown Mot. for Leave to Supplement, J.A., 352-58; Brown Supplemental Brief, J.A., 359-77). The

documents Ms. Brown sought to introduce establish that Chesapeake itself interpreted Paragraph 19 to require the parties to reach an agreement on the terms of any "extension" of the primary term of the lease. (Offer to Extend Lease, J.A., 371-72). Chesapeake filed a response in opposition to her motion for leave to supplement on April 2, 2013. (Chesapeake Response to Mot. for Leave to Supplement, J.A., 378-87). On April 9, 2013, Ms. Brown filed her Reply. (Brown Reply in Supp. of Mot. for Leave to Supplement, J.A., 388-418)

Following the briefing, but without oral argument, the District Court issued a Memorandum Opinion and Order on August 21, 2013, denying Plaintiff's Motion for Summary Judgment, granting Defendant's Motion for Summary Judgment, denying as moot Plaintiff's Motion to Strike Declaration of Mark A. Acree, and denying as moot Plaintiff's Motion for Leave to File Supplemental Response in Opposition to Defendant's Motion for Summary Judgment. (Mem. Op. and Order, J.A., 419-36). The District Court erroneously found Chesapeake's interpretation of Paragraph 19 to be the "most reasonable interpretation," essentially acknowledging that Ms. Brown's interpretation of Paragraph 19 was also reasonable, but failing to apply the proper legal standard. *Id.* The District Court also failed to address several valid arguments advanced by Ms. Brown in her briefs.

The District Court erred. The Court applied an improper standard in interpreting the language of the lease. At best, the language in Paragraph 19 of the

lease is ambiguous. Rather than recognizing the ambiguity, the District Court erred by simply choosing an interpretation unsupported by the language of the lease. Further, the Court below ignored any evidence or arguments that called into question Chesapeake's alleged interpretation of the language. Ms. Brown filed her notice of appeal on September 19, 2013. (Notice of Appeal, J.A., 437).

## STATEMENT OF THE FACTS

On April 11, 2007, Ms. Brown, as lessor, entered into an oil and gas lease with Great Lake Energy Partners, LLC,[2] as lessee, leasing the oil, gas and coalbed methane gas in and under her real estate consisting of approximately 63.78 acres located in Hancock County, West Virginia (hereinafter the "Lease"). (Complaint. ¶ 8, J.A., 23; Lease, J.A., 32-34). In exchange for leasing her oil and gas rights, Brown received a lease payment of One-Thousand Dollars ($1,000.00). (Notice of Removal, Ex. B, Aff. of Jeff Pinter, ¶ 9, J.A., 37). The Lease also provided that Brown would receive a royalty of one-eighth (1/8) of the oil and gas produced from the premises. (Lease ¶ 4, J.A., 32).

Ms. Brown intended to enter into a five (5) year lease that would be renegotiated upon its expiration. (Brown Dep., 9:6-10; 17:17-21, J.A., 233, 235). Additionally, at the time of the signing of the Lease, it was represented to Ms.

---

[2] Subsequent to the signing of the Lease, Chesapeake, acquired, purchased and/or was assigned all rights, title and interest in and to the Lease. (Answer ¶ 11, J.A., 42).

Brown by the Lessee's leasing agent, Donald Huffman, that the Lease would be

renegotiated at the end of the five (5) year primary term. (Brown Dep., 8:12-24;

9:1-10, J.A., 233).  Mr. Huffman also told Ms. Brown, who was in dire straits

financially, that he was in a hurry to leave and did not allow her sufficient time to

read through the entire Lease. (Brown Dep., 11:9-16, J.A., 234).

Paragraph 2 of the Lease was the "Habendum Clause," also known as the

"term" clause[3], which states that the Lease was for a period of five (5) years.

Paragraph 2 states in full:

> This lease shall continue in force and the rights granted hereunder be
> quietly enjoyed by the Lessee for a term of five (5) years and so much
> longer thereafter as oil, gas and/or coalbed methane gas or their
> constituents are produced or are capable of being produced on the
> premises in paying quantities, in the judgment of the Lessee, or as the
> premises shall be operated by the Lessee in the search for oil, gas
> and/or coalbed methane gas and as provided in Paragraph 7
> following."[4]

(Lease, ¶2, J.A., 32).

During the five (5) year primary term of the Lease from April 11, 2007, to

April 11, 2012, neither Chesapeake, nor its predecessors in interest, conducted any

operations on the leased premises or on any pooling or production unit of which

---

[3] The purpose of the term clause is to "define and limit the duration of the lessee's estate." *McCullough Oil, Inc. v. Rezek*, 176 W.Va. 638, 642, 346 S.E.2d 788, 793 (1986).

[4] Paragraph 7 of the Lease is the Dry-Hole Clause specifying how the Lessee may maintain the Lease after the drilling of a "dry hole."

the premises was a part.  (Answer ¶ 13, J.A., 42). Therefore, the Lease was not extended beyond its primary term due to production of oil, gas, and/or coalbed methane gas.

However, after acquiring the Lease, Chesapeake took the position that Paragraph 19 of the Lease provides it with an absolute and unfettered right to extend the Lease for an additional five (5) years simply by paying the same consideration paid for the initial Lease. (Complaint, ¶ 18, J.A., 25; Answer. ¶ 18, J.A., 43). Paragraph 19 of the Lease states in full:

> In consideration of the acceptance of this lease by the Lessee, the Lessor agrees for himself and his heirs, successors and assigns, that no other lease for the minerals covered by this lease shall be granted by the Lessor during the term of this lease or any extension or renewal thereof granted to the Lessee herein. **Upon expiration of this lease and within sixty (60) days thereinafter, Lessor grants to Lessee an option to extend or renew under similar terms a like lease.**

(Lease, ¶19, J.A., 34)(emphasis added).

On or about March 29, 2012, thirteen (13) days prior to the expiration of the Lease, Chesapeake unilaterally filed a Notice of Extension of Oil and Gas Lease with the Clerk of the County Commission of Hancock County, West Virginia purporting to extend the Lease.  (Answer ¶ 19, J.A., 43). Prior to filing the Notice Chesapeake did not even attempt to negotiate the terms upon which the Lease would continue, nor did it even attempt to communicate with Brown. (Brown Dep., 32:12-15, J.A., 239). Upon filing the Notice of Extension, Chesapeake sent a letter

with an enclosed check for the original consideration – One Thousand Dollars ($1,000.00) – to Brown informing her that Chesapeake had elected to extend the primary term of the Lease for an additional five (5) years pursuant to Paragraph 19 of the Lease. (Notice of Removal, Ex. B, Aff. of Jeff Pinter,  ¶¶ 8-9, J.A., 37).

## SUMMARY OF THE ARGUMENT

Appellant, Ms. Brown, interprets Paragraph 19 to grant the Lessee a sixty (60) day period following the expiration of the five (5) year primary term of the lease in which to enter into a "like lease" "under similar terms." Since the terms were deliberately left open, the parties intended that an agreement be reached between them for any further lease on her property. There is no reasonable interpretation of Paragraph 19 that would grant the Lessee an absolute right to continue the lease under terms identical and for the same consideration as the original lease.

Chesapeake has taken the position that, despite the qualifying language "under similar terms," Paragraph 19 provides it with the right to extend the Lease under the same terms as the original lease. Chesapeake speciously reads Paragraph 19 to allow it to avoid paying market rates for an extension or renewal of the Lease.

At the very least, the terms contained in Paragraph 19 are inconsistent on their face and the phraseology used can support reasonable differences of opinion as to the meaning of the words employed and the obligations undertaken. As such,

10

Paragraph 19 is ambiguous and must be construed against Chesapeake as the drafter.

In finding Paragraph 19 unambiguous, the District Court refused to consider the grammatical structure of the sentence or acknowledge that Paragraph 19 can be interpreted to provide an option to extend under similar terms or renew under similar terms with each option having a distinct meaning. The District Court also erred in refusing to consider whether Paragraph 19 as Chesapeake seeks to apply it creates an unconscionable result.

Since Paragraph 19 can reasonably be interpreted as Ms. Brown reads it, the sentence is at least ambiguous and the extrinsic evidence as to the parties' intent should be considered. As such, the District Court erred in failing to consider any extrinsic evidence and denying Ms. Brown's Motion for Leave to File Supplemental Response in Opposition to Chesapeake's Motion for Summary Judgment. (Brown Mot. for Leave to Supplement, J.A., 352-55). As such, the District Court must be reversed.

### STANDARD OF REVIEW

The Court of Appeals reviews a grant of summary judgment *de novo*, applying the same standard as the trial court and without deference to the trial court. *Nader v. Blair,* 549 F.3d 953, 958 (4th Cir. 2008). Summary judgment is

appropriate only when "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(a).

"When faced with cross-motions for summary judgment, the court must review each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law, and in considering each motion the court must take care to resolve all factual disputes and any competing, rational inferences in the light most favorable to the party opposing that motion." *Sheridan v. Nationwide Ret. Solutions, Inc.*, 313 F. App'x 615, 616-17 (4th Cir. 2009) (citations and quotation marks omitted). The mere fact that both sides moved for summary judgment does not establish the propriety of deciding a case on summary judgment, nor does it establish that there is no issue of fact requiring that summary judgment be granted to one side or another." *Id.* "A party may concede that there is no issue if his legal theory is accepted and yet maintain that there is a genuine dispute as to material facts if his opponent's theory is adopted." *Am. Fid. & Cas. Co. v. London & Edinburgh Ins. Co.*, 354 F.2d 214, 216 (4th Cir. 1965).

The appellate court also reviews *de novo* a District Court's decision on an issue of contract interpretation. *Seabulk Offshore, Ltd. v. Am. Home Assur. Co.*, 377 F.3d 408, 418 (4th Cir. 2004)(citing *Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.,* 252 F.3d 707, 710 (4th Cir.2001)). "The interpretation of a written contract is a question of law that turns upon a reading of the document itself, and a

12

District Court is in no better position than an appellate court to decide such an issue." *Seabulk*, 377 F.3d at 418 (citing *Hendricks v. Cent. Reserve Life Ins. Co.,* 39 F.3d 507, 512 (4th Cir.1994)).

In deciding whether to grant summary judgment on a matter of contract interpretation, the court must first determine if the contract is ambiguous or unambiguous on its face. *Sheridan*, 313 F. App'x at 616-17 (quoting *Washington Metro. Area Transit Auth. v. Potomac Invest. Props., Inc.,* 476 F.3d 231, 235 (4th Cir.2007)(quoting *Goodman v. R.T.C.,* 7 F.3d 1123, 1126 (4th Cir.1993)). Contract language is ambiguous where an agreement's terms are inconsistent on their face or where the phraseology can support reasonable differences of opinion as to the meaning of the words employed and the obligations undertaken. *Fraternal Order of Police, Lodge No. 69 v. City of Fairmont*, 196 W. Va. 97, 101, 468 S.E.2d 712, 716 (1996).

Where a contract is found to be ambiguous, the court may examine evidence extrinsic to the contract that is included in the summary judgment materials. *Sheridan*, 313 F. App'x at 617. The court must construe the extrinsic evidence, and all reasonable inferences that may be drawn from such evidence, in the light most favorable to the nonmoving party. *PBM Prods., LLC v. Mead Johnson & Co.,* 639 F.3d 111, 119 (4th Cir. 2011); *Atkinson Warehouse & Distribution, Inc. v. Ecolab Inc.*, 15 F. App'x 160, 164 (4th Cir. 2001).

13

"Where the evidence pertaining to the parties' intent conflicts, the ambiguous terms should be construed against the party who drafted the document." *Lee v. Lee*, 228 W. Va. 483, 487, 721 S.E.2d 53, 57 (2011). An ambiguous provision in an oil and gas lease must be construed against the lessee, as the party who drafted the contract, and the construction most favorable to the lessor should be adopted. Syl. pt. 5, *Energy Dev. Corp. v. Moss*, 214 W. Va. 577, 579, 591 S.E.2d 135, 137 (2003).

Only after construing all evidence and inferences against the nonmoving party and construing all ambiguous provisions against the draftsman, may the court find the evidence dispositive of the interpretive issue and grant summary judgment. *Id.*; *Sheridan*, 313 F. App'x at 617. If, however, the agreement is capable of a least two plausible interpretations, summary judgment must be refused and the interpretation left to the trier of fact. *Atalla v. Abdul-Baki*, 976 F.2d 189, 192-93 (4th Cir. 1992). As this Court has stated:

> Only an unambiguous writing justifie[s] summary judgment, and no writing is unambiguous if 'susceptible of two reasonable interpretations.'...If there is more than one permissible inference as to intent to be drawn from the language employed, the question of the parties' actual intention is a triable issue of fact.

*Id.* (quoting *Bear Brand Hosiery Co. v. Tights, Inc.*, 605 F.2d 723, 726 (4th Cir. 1979) (quoting *American Fidelity & Casualty Co. v. London & Edinburgh Ins. Co.,* 354 F.2d 214, 216 (4th Cir.1965))). "This accords with the principle that the

intention of the contracting parties is a question of fact." *Bear Brand Hosiery Co.*,

605 F.2d at 726.

## ARGUMENT

**I.    THE DISTRICT COURT ERRED IN GRANTING SUMMARY JUDGMENT IN FAVOR OF CHESAPEAKE ON THE BASIS THAT CHESAPEAKE'S INTERPRETATION OF PARAGRAPH 19 IS THE "MOST REASONABLE INTERPRETATION."**

The District Court erred in granting Chesapeake's Motion for Summary

Judgment. The proper standard for review of a contract interpretation issue on

summary judgment is whether there is *only one* reasonable interpretation of the

disputed provision. *Fraternal Order of Police*, 196 W. Va., at 101, 468 S.E.2d, at

716. Despite the plain language of Paragraph 19, the District Court refused to

acknowledge that the language could support "reasonable differences of opinion as

to the meaning of words employed and obligations undertaken." *Id.* Further, the

interpretation of Paragraph 19 advanced by Chesapeake creates an inconsistency

within the plain terms of Paragraph 19 and required the District Court to disregard

unambiguous language in the same sentence. As such, the District Court clearly

erred.

**A.    The District Court applied an erroneous standard for granting summary judgment on a matter of contract interpretation.**

The District Court adopted Chesapeake's interpretation of Paragraph 19

because it found that Brown's interpretation of Paragraph 19 was not the "*most*

15

*reasonable interpretation.*" (Mem. Op. and Order, J.A., 427). However, the appropriate standard is not whether the moving party's interpretation is the "most reasonable interpretation," but rather, whether it is the *only* reasonable interpretation. Syl. pt. 1, *Shamblin v. Nationwide Mut. Ins. Co.*, 175 W. Va. 337, 338, 332 S.E.2d 639, 640 (1985). The District Court failed to analyze whether Paragraph 19 is ambiguous. Instead, it merely adopted the interpretation it found "most reasonable," declared its reading unambiguous, and completely discounted the fact that the language was susceptible to at least two reasonable interpretations.

The first step in deciding whether to grant summary judgment on a matter of contract interpretation is to determine if the contract is ambiguous or unambiguous on its face. *Sheridan*, 313 F. App'x at 616-17. If the contract is capable of a least two plausible interpretations, summary judgment must be refused and the interpretation left to the trier of fact, unless extrinsic evidence or a rule of law may resolve the discrepancy. *Id.*

The West Virginia Supreme Court has defined ambiguity as language "reasonably susceptible of two different meanings" or language "of such doubtful meaning that reasonable minds might be uncertain or disagree as to its meaning[.]" *Shamblin,* 175 W.Va. 337, 332 S.E.2d 639, at syl. pt. 1. Contract language is also ambiguous where its "terms are inconsistent on their face." *Fraternal Order of Police*, 196 W. Va., at 101, 468 S.E.2d, at 716.

16

The District Court failed to even consider whether reasonable minds might be uncertain or disagree as to the meaning of Paragraph 19. Rather, in the face of two reasonable interpretations, the District Court simply picked the interpretation it preferred, which is clearly erroneous. The District Court erred in finding Paragraph 19 unambiguous and granting summary judgment in favor of Chesapeake. In light of the evidence in the record, the District Court was required, at a minimum, to find the language in Paragraph 19 ambiguous.

The proper procedure after finding Paragraph 19 to be ambiguous would have been to construe all extrinsic evidence and inferences therefrom against the moving party - Chesapeake. *Sheridan*, 313 F. App'x at 617. If a conflict still existed as to the parties' intent after construing the extrinsic evidence and inferences against Chesapeake, the District Court was required to construe all ambiguous provisions against Chesapeake as the draftsman. *Lee*, 721 S.E.2d at 57. The District Court failed to do any of these things and erred by granting summary judgment in Chesapeake's favor.

**B.    Paragraph 19 is ambiguous because it is susceptible of at least two reasonable interpretations.**

Ms. Brown interprets Paragraph 19 to provide an option to the Lessee to enter into a "like lease" "under similar terms" within the sixty (60) day period following the expiration of the five (5) year lease. During the sixty (60) day period, the Lessor is precluded from entering into a lease with a third party. Since the

17

terms of any extension or renewal entered into pursuant to the option were deliberately left open by the use of the terms "similar" and "like," Paragraph 19 required the parties enter into a new agreement based on terms and conditions acceptable to both parties. This interpretation is consistent with the "term clause" of the Lease providing for a five (5) year lease; Ms. Brown's intent to enter into a five (5) year lease that could be renegotiated at the end of that five (5) year term; the representations of the Lessee's leasing agent, Donald Huffman, made during the execution of the Lease; and the plain language of Paragraph 19 itself.

Chesapeake argues that Paragraph 19 grants two separate options to the Lessee: (1) "to extend" or (2) to "renew under similar terms a like lease." Chesapeake contends that the definition of the term "extend" implies that all of the terms of the existing Lease remain unchanged, while the phrase "renew under similar terms a like lease" contemplates entering into a new agreement with terms different than those of the original Lease. Chesapeake erroneously claims that by designating the exercise of its option as an "extension" it could continue the Lease for the arbitrary period of five (5) additional years by tendering the original consideration of $1,000 to Ms. Brown.

Importantly, both Chesapeake and the District Court accept that the modifying phase "under similar terms" leaves the terms of the succeeding lease open. (Chesapeke Mem. in Supp., J.A. 84, 86; Mem. Op. and Order, J.A., 425). Likewise,

they agree that "a like lease" may be similar but not necessarily identical to the original lease. *Id.*

The dispute arises over whether "under similar terms" modifies "extend" and whether what may be extended is "a like lease." In order to reach the interpretation advanced by Chesapeake and endorsed by the District Court, the rules of grammar must be set aside, additional words must be implied into the sentence, and the first half of the operative sentence must be completely ignored.

Moreover, the distinction made between the terms "extend" and "renew" in no way mandates that an "extension" be under identical terms. When contemplated by the parties, an extension can require a separate agreement which sets forth those terms that will be modified, while a renewal would require the execution of a new lease. *See United Woolen Mills Co. v. Honaker*, 96 W.Va. 166, 122 S.E. 440, 444 (1924). Therefore, it is completely reasonable to interpret Paragraph 19 to provide an option to "extend under similar terms a like lease" or to "renew under similar terms a like lease," both of which required the parties to reach an agreement as to the terms of the extension or renewal.

Ms. Brown's interpretation of Paragraph 19 is reasonable because it is supported not only by her uncontroverted intent, but also the plain language of the Lease. In reading the language of Paragraph 19, the Court should consider not only the ordinary meaning of the terms employed, "but also their placement, taking into

account rules of grammar, and their context." *Miller's Apple Valley Chevrolet Olds-Geo, Inc. v. Goodwin*, 177 F.3d 232, 234 (4th Cir. 1999) (citing *Bailey v. United States,* 516 U.S. 137, 145, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995)); *DBS, Inc. v. Selective Way Ins. Co.*, 2:13CV312, 2013 WL 3729169 (E.D. Va. July 10, 2013)("Grammar matters. The Court cannot permit a party to mean something without actually saying it; otherwise, poor writing could serve as cover for missing facts."); *Davis v. Pletcher,* 727 S.W.2d 29, 33 (Tex.App.1987)("Rules of grammar underlie all legal rules applicable in the construction of contracts"). Therefore, as an initial matter, the District Court erred in explicitly refusing to consider the term "extend" in the context of Paragraph 19 or take into account the standard rules of grammar. (R. #52, Mem. Op. and Order, fn. 5, J.A., 433).

In deciding to ignore the grammar of the sentence, the District Court relied on *Payless Shoesource, Inc. v. Travelers Companies, Inc.*, 585 F.3d 1366, 1371-72 (10th Cir. 2009). According to the District Court *Payless* stands for proposition that the Court did not have to consider the grammar and context of the terms contained in Paragraph 19 in determining whether the provision is ambiguous. However, the court in *Payless* conducted an extensive analysis of the grammatical

structure of the provision at issue before finding the provision unambiguous. *Id.,* at 1370.[5]

Analyzing the language of Paragraph 19 in light of its grammatical structure makes clear that if the Lessee exercised its option, the succeeding lease must be "a like lease" "under similar terms." First, the direct object of the verbs "extend*"* and "renew" is "a like lease" since only one direct object was identified in the sentence. Standard rules of grammar hold that where there are two verbs in a sentence separated by a conjunction and only one direct object, the direct object is a shared direct object of both verbs. Sentence Diagramming, Glencoe/McGraw-Hill 11.[6] To interpret "a like lease" to not be the direct object of "extend" would leave the transitive verb "extend" without a direct object, which is grammatically improper.[7] Therefore, the option granted by Paragraph 19 is "to extend or renew…a like lease," which contemplates a lease separate from the original lease.

The District Court erroneously ruled that the mere use of the word "extend" implies that the existing lease continues. (Mem. Op. and Order, J.A., 432). The

---

[5] Remarkably, the court in *Payless* interpreted the modifying phrase "other similar provisions" to apply to every preceding federal statute listed in the provision, not just to the phrase immediately preceding it; just as Brown requested the lower court to apply "under similar terms" to both "extend" and "renew." *Id.*

[6] http://images.pcmac.org/SiSFiles/Schools/AL/MontgomeryPublic/FloydMiddle/Uploads/DocumentsCategories/Documents/sentence%20diagramming_1.pdf

[7] "Extend" is a transitive verb, which is "a verb (or verb construction) that requires an object to be grammatical." http://www.thefreedictionary.com/transitive+verb.

District Court's interpretation is in clear contradiction to what the sentence states. It is indisputable that if one reading Paragraph 19 were to ask, "What may be extended?" the sentence answers the question "a like lease."

Moreover, the fact that the District Court was required to imply words absent from the sentence to reach its conclusion confirms that Paragraph 19 did not unambiguously express Chesapeake's interpretation. If a writing is unambiguous, it may be enforced as clearly written and language need not and cannot be implied or added. *Fraternal Order of Police*, 196 W. Va., at 99, 468 S.E.2d, at 714. Further, it is axiomatic that an implication arising from the words of a contract must yield to express terms manifesting intention to the contrary. Syl. *Berry v. Humphreys*, 76 W. Va. 668, 86 S.E. 568 (1915). The application of elementary rules of grammar demonstrates, at a minimum, that there is an uncertainty in the sentence that may lead to reasonable differences in opinion as to its meaning.

Second, the rules of grammar mandate that the phrase "under similar terms" modifies both "extend" and "renew." This rule of grammar has been applied repeatedly when interpreting legal documents and has been taken the form of a canon of construction known as the "Series-Qualifier Canon." Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts § 20 (2012)(citing *Porto Rico Ry., Light & Power Co. v. Mor*, 253 U.S. 345, 348 (1920)("When several words are followed by a clause which is applicable as much

to the first and other words as to the last, the natural construction of the language demands that the clause be read as applicable to all."). According to the Series-Qualifier Canon, "When there is a straightforward, parallel construction that involves all nouns or verbs in a series, a prepositive or postpositive modifier normally applies to the entire series." *Id*., at § 20.

A case exemplifying the simple construction contemplated by this grammatical rule was decided by this Court in *Long v. United States*, 199 F.2d 717, 719 (4th Cir. 1952). In *Long*, the Court had to determine the application of the adverb "forcibly" in 18 U.S.C § 111 which states, "Whoever forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any person designated in section 1114…." *Id.* The question presented was whether forcibly applied solely to assaults, or applied to "resists, opposes, impedes, intimidates, or interferes." *Id.* This Court applied the "ordinary rules of grammatical construction" to hold that the "use of the adverb 'forcibly' before the first of the string of verbs, with the disjunctive conjunction used only between the last two of them, shows quite plainly that the adverb is to be interpreted as modifying them all." *Id.*

The Series-Qualifier Canon applies equally to postpositive modifiers (that is, those modifiers positioned after what they modify). Scalia & Garner, at § 20; *see Amaral v. Saint Cloud Hosp.*, 598 N.W.2d 379 (Minn. 1999). In interpreting the phrase "requesting or seeking through discovery," the Court in *Amaral* construed

the terms according to the rules of grammar and held that the adverbial phrase "through discovery" modified both "requesting" and "seeking." *Amaral,* 598 N.W.2d at 388. Thus, the phrase is interpreted to read, "requesting [through discovery] or seeking through discovery." *Id.* at 384.

A correlative rule to the Series-Qualifier Canon is that a determiner (*a, the, to, etc.*) will be repeated before the second element if the parties intend to limit the backward reach of the modifying phrase: *To clap and to cheer lustily* (the clapping need not be lusty)." Scalia & Garner, at § 20.

When this rule of grammar is applied to Paragraph 19, it is clear that the phrase "under similar terms" modifies both "extend" and "renew." Further, the fact that a second determiner *to* was deliberately not repeated before the second verb, *renew*, expresses the parties' intent to apply "under similar terms" to both "extend" and "renew." This is the most reasonable interpretation and comports with the plain language of the sentence.

Despite the fact that the plain language of Paragraph 19 dictates that the modifying phrase "under similar terms" applies equally to both "extend" and "renew" and that Paragraph 19 provides that what may be extended is "a like lease," the District Court found that the term "extend" in and of itself was an entirely separate option. To reach this interpretation, the District Court defined the terms out of context and relied on the use of the term "or" stating that it ordinarily

connotes two alternative options. (Mem. Op. and Order, J.A., 433). This is clearly erroneous.

In addition to ignoring the plain language of Paragraph 19, the District Court also relied on an erroneous interpretation of law in reaching its ruling. Interpreting a similar renewal provision, the West Virginia Supreme Court ruled that a lease providing "the privilege of *extending or renewing*" did not provide the lessee a right to continue the lease for the same consideration as the original lease. *See United Woolen Mills Co. v. Honaker*, 96 W.Va. 166, 122 S.E. 440, 444 (1924)(emphasis added). In *Woolen Mills*, the West Virginia Supreme Court was charged with interpreting a lease containing a clause providing the lessee the "privilege of *extending or renewing* the same, provided it is willing to pay the same rental therefor as offered by any other responsible person, firm, or corporation in good faith." *Id.,* at 441(emphasis added).  The lessee sought to continue to lease the property for the rent provided for in the original lease - $200 per month. *Id.* at 442. The Court found that the lessee could continue to lease under the terms and conditions of the original lease, *except that the rent would be set at the fair rental value at the time of the renewal* - $400 per month. *Id.* at 444.

If the phrase "extending or renewing" demands that the lessee has the "privilege of extending" which permits the lessee to continue the lease under *all* of the same terms, including the consideration, as the District Court erroneously

25

found, the lessee in *Woolen Mills* could have elected to pay the original rent of

$200 per month. However, while the Court recognized that the terms "extend" and

"renew" may have separate meanings, it applied the modifying provision following

"extending or renewing" to apply to both terms. *Id.* Consequently, the Court in

*Woolen Mills* did not grant the lessee the right to continue to the lease under the

previous rent. *Id.* Thus, the District Court's theory that "extend" and "renew" when

separated by the word "or" must provide a separate option to continue the existing

lease under all the existing terms is simply not the law in West Virginia.

      If this Court is inclined to interpret Paragraph 19 as providing two separate

options, the options granted were "to extend under similar terms a like lease" or "to

renew under similar terms a like lease." The District Court ruled that such an

interpretation is incorrect because both options would require a negotiation.

However, that is exactly what the parties intended in this case. The distinction

between the two options is that an extension does not require the execution of an

entirely new lease, while a renewal does. An extension of the Lease at issue, and

an extension of a lease generally can still require an agreement as to the terms

under which the lease will continue. Meanwhile, a renewal of the Lease at issue,

and the renewal of a lease generally would require an entirely new lease with all of

the provisions of the lease reiterated.

26

An example of when an extension of an oil and gas lease can be "under similar terms" requiring an agreement between the parties but without an entirely new lease, is the agreement proposed by Chesapeake "to extend the primary term" of a lease containing the subject Paragraph 19 provision. (Chesapeake Offer to Extend Lease, J.A., 357-58). This offer is a one-page written offer "to extend the primary term" of the lease made by Chesapeake to Larry E. Reed, the lessor of a Great Lakes Energy Partners lease containing Paragraph 19. (Affidavit of Larry E. Reed, ¶¶ 7-8, J.A., 399).  In making the offer, Chesapeake recognized that Paragraph 19 required it to pay to the lessor a negotiated up front bonus payment and an increase in the royalty percentage to conform to market rates. Chesapeake's offer to Mr. Reed was an increased bonus payment of Twenty-Four Thousand Dollars ($24,000.00) and an increase in his oil and gas royalty from $1/8^{th}$ (12.5%) to sixteen percent (16%). (Id.; Chesapeake Offer to Extend Lease, J.A., 357-58). The proposed extension of the primary term was for an additional **one (1)** year. (Id.) Contrary to the District Court's ruling in this case, Chesapeake itself has acknowledged in the context of the lease at issue that an extension can be a one-page document that provides which terms of the underlying lease will be modified. *See id.*

Clearly, this is the option that the parties intended to be conveyed through Paragraph 19. The District Court erred in finding that an extension cannot possibly be under terms other than those contained in the original lease because an offer

from Chesapeake to "extend" a lease under terms different than those in the original lease in fact exists. This Court should interpret Paragraph 19 in accordance with the parties' intent and find that Paragraph 19 fails to unambiguously grant Chesapeake the option to extend the existing lease under all of the same terms as the original lease.

## C. The District Court's interpretation of Paragraph 19 creates an inconsistency on its face, and therefore, the sentence is ambiguous.

The District Court erred in finding that Brown's interpretation "cannot be the most reasonable interpretation" because it treats the terms "extend" and "renew" as synonymous and renders the use of both terms "mere surplusage." (Mem. Op. and Order, J.A., 427). Generally a contract is to be interpreted as to give meaning to every clause rather than leave a portion of the contract meaningless or reduced to mere surplusage. *Goodman,* 7 F.3d at 1127. However, the "canon against surplusage is not absolute" and "assists only where a competing interpretation gives effect to every clause and word" of the writing. *Marx v. Gen. Revenue Corp.*, 133 S. Ct. 1166, 1170, 185 L. Ed. 2d 242 (2013)(quoting *Microsoft Corp. v. i4i Ltd. Partnership,* 131 S. Ct. 2238, 2248, 180 L. Ed. 2d 131 (2011); *Freeman v. Quicken Loans, Inc.*, 132 S. Ct. 2034, 2042-43, 182 L. Ed. 2d 955 (2012)("[T]he canon against surplusage merely favors that interpretation which *avoids* surplusage").

Here, Chesapeake's interpretation of Paragraph 19 does not give effect to the entire first half of the operative sentence – "Upon expiration of this lease and within sixty (60) days thereinafter, Lessor grants to Lessee an option…." Notably, neither Chesapeake nor the District Court even attempt to give meaning to this clause. This clause requires the Lease to expire before the option is granted and cannot be reconciled with the District Court's erroneous definition of "extend." Adopting Chesapeake's interpretation of Paragraph 19 creates an inconsistency between the terms thereby rendering Paragraph 19 ambiguous. *Fraternal Order of Police*, 196 W. Va., at 101, 468 S.E.2d, at 716.

The distinction made by the District Court between the terms "extend" and "renew" is not applicable in the context of Paragraph 19. Whether language is ambiguous is determined not by reference to the word in isolation, but by the specific context in which a word is used. *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341, 117 S. Ct. 843, 846, 136 L. Ed. 2d 808 (1997); *W. Virginia Health Care Cost Review Auth. v. Boone Mem'l Hosp.*, 196 W. Va. 326, 338, 472 S.E.2d 411, 423 (1996). The District Court defined "extend" as meaning to "simply lengthen or draw out that which already exists," while "renew" is defined as "to begin again." (Mem. Op. and Order, J.A., 427, 432). Based on this distinction, the District Court found that "the mere use of the word 'extend' necessarily means that the *existing* terms and *existing* lease would continue." (Mem. Op. and Order, J.A., 432).

29

(emphasis added). Applying the Court's definitions of the terms, Chesapeake

contends that the Lease never expired, but it was merely continued uninterrupted

by its exercise of the option to "extend."

This application of the terms is entirely contradictory to the language

contained in the same sentence stating when the option is granted – "Upon

expiration of this lease." The Court must give meaning to every clause and term

contained in Paragraph 19, including the first half of the sentence. *Goodman*, 7

F.3d at 1127. "Expiration" is defined to mean "the fact of coming to an end or no

longer being valid after a period of time : the fact of expiring" or "the fact of

coming to an end or the point at which something ends : termination." Merriam–

Webster Online Dictionary. Since the Lease must expire before any option is

granted, it must be "made new again" and the *existing lease* cannot be continued

because it no longer exists.

Even the cases cited by the District Court to support its definition of the

terms reinforce that an expired or terminated lease cannot be extended, but must be

renewed. In *Loeffler v. Federal Supply Co.*, 102 P.2d 862, 864 (Okla. 1940), the

court stated "To renew a charter, is to give a new existence to one which has been

forfeited, or which has lost its vitality by lapse of time. To extend a charter, is to

give one which now exists greater or longer time to operate in than that to which is was originally limited."[8]

Chesapeake's option was conditional and depended upon the expiration of the Lease. *See Nach v. Mendrell*, 110 W. Va. 139, 157 S.E. 179, 179-80 (1931). Prior to the expiration of the Lease, Chesapeake could not extend or renew the Lease because the option had not yet been granted. At the time the Lessee obtains its right to exercise an option, no lease exists to be lengthened or continued.

This case is analogous to *Nach* where the West Virginia Supreme Court had to determine whether a one-year lease contemplated an extension of the original lease or a renewal requiring the execution of a new lease. *Id.* The operative clause in *Nach* stated that the lessee has the "option to a further lease **at the expiration** of this lease for the further term of Four (4) years, upon the same conditions and for the same rental for which this lease is given." *Id.* (emphasis added). The Court reasoned that the right to "further lease" could not be exercised until the original lease expired. *Id.* Since the operative clause required the lease to expire, the Court concluded that the covenant created a right to renew, and contemplated the making of a new lease at the end of the first year. *Id.*

---

[8] The court also went on to state that the terms "extend" and "renew" "are not entirely free from ambiguity. Their significance, like that of other words, must depend much on the context." *Loeffler*, 102 P.2d at 864.

The fact that the option in Paragraph 19 is not granted until the expiration of the lease is not a mere technicality. By requiring the Lease to expire before the option was granted to the Lessee, the parties obviously intended that a new agreement be reached between the parties. As in *Nach*, Paragraph 19 expressly requires the Lease to expire and therefore the parties must reach a new agreement for Chesapeake to maintain a leasehold on Ms. Brown's property. The District Court's interpretation of Paragraph 19 fails to give meaning and effect to the entire first half of the operative clause. By contrast, Ms. Brown's interpretation of Paragraph 19 gives meaning to the entire sentence. Therefore, at least two reasonable interpretations of Paragraph 19 exist, and at a minimum, the language is ambiguous.

## II.    THE DISTRICT COURT ERRED IN REFUSING TO CONSIDER WHETHER CHESAPEAKE'S INTERPRETATION OF PARAGRAPH 19 CREATED AN UNCONSCIONABLE RESULT.

The District Court erred in refusing to consider whether Chesapeake's interpretation of Paragraph 19 would create an unconscionable result. (Mem. Op. and Order, fn. 6, J.A., 435). Contrary to the District Court's ruling, Ms. Brown's assertion regarding unconscionability was not a separate claim, but rather a legal theory as to why Chesapeake's interpretation is unreasonable. The District Court reasoned that since Ms. Brown's unconscionability argument was not raised in her Complaint or her motion for summary judgment it was untimely. *Id.* However, that

is not the standard for addressing a legal argument in opposition to an interpretation of a contract provision raised in a motion for summary judgment. *See Palmer v. Ameribanq Mortgage Grp., LLC*, CIV.A. 05-2023, 2009 WL 1249292 (E.D. Pa. May 5, 2009). There is a stark contrast between a new claim raised in response to a motion for summary judgment and a legal theory that supports a claim pled in the complaint. *Id.*; *Phillips v. Raytheon Applied Signal Tech., Inc.*, CIV.A. ELH-11-3230, 2013 WL 5440802 (D. Md. Sept. 27, 2013). The District Court failed to realize that contrast in reaching its ruling in this case.

Plaintiff's Complaint states but a single claim – that Paragraph 19 is insufficient to grant Chesapeake any right to continue the Lease. (Complaint, ¶15, J.A., 24). Ms. Brown moved for summary judgment on her interpretation of Paragraph 19, which if accepted does not provide the Lessee a unilateral right to extend the Lease under same terms as the original lease. When Chesapeake also moved for summary judgment and for the first time articulated its interpretation of Paragraph 19, Ms. Brown responded in opposition with all of the reasons its interpretation is unreasonable, including that Chesapeake's interpretation creates an unconscionable result. Contrary to the District Court's ruling, Ms. Brown's argument that Paragraph 19, as Chesapeake seeks to apply it, is unenforceable because it would be unconscionable is a legal theory, not a separate claim.   The District Court erred in refusing to address this argument.

**A. Paragraph 19 of the Lease, as Chesapeake seeks to apply it, is unconscionable and deceptive and therefore unenforceable as a matter of law.**

Chesapeake's interpretation of Paragraph 19 creates an unconscionable result. West Virginia law holds that contracts will not be interpreted in a manner that creates a provision that is so one-sided as to lead to an unconscionable result. *Dunbar Fraternal Order of Police, Lodge No. 119 v. City of Dunbar*, 218 W. Va. 239, 244, 624 S.E.2d 586, 591 (2005)(quoting syl. pt. 2, *Ashland Oil, Inc. v. Donahue,* 159 W.Va. 463, 223 S.E.2d 433 (1976)). Under the doctrine of unconscionability where there is an overall and gross imbalance or one-sidedness or lop-sidedness in a contract, a court is justified in refusing to enforce the contract as written. Syl. Pt. 12, *Brown v. Genesis Healthcare Corp.,* 228 W.Va. 646, 724 S.E.2d 250 (2011).

Under West Virginia law, unconscionability is analyzed in terms of two component parts: 1) procedural unconscionability; and 2) substantive unconscionability. "To be unenforceable, a contract term must—'at least in some small measure'—be both procedurally and substantively unconscionable," but both need not be present to the same degree. *Dan Ryan Builders, Inc. v. Nelson*, 2012 WL 5834590 at *7 (W.Va. November 15, 2012); *Grayiel v. Appalachian Energy Partners 2001-D, LLP*, 2012 WL 5834932 at *10 (W.Va. November 15, 2012).

34

Procedural unconscionability arises from inequities, improprieties, or
unfairness in the bargaining process and the formation of the contract that suggest
a lack of a real and voluntary meeting of the minds. *Brown*, 228 W.Va. 646, 724
S.E.2d 250, at syl. pt. 17.  Procedural unconscionability involves an analysis of the
inadequacies of the disadvantaged party, including, but not limited to: the literacy,
or lack of sophistication of the party; hidden or unduly complex contract terms; the
adhesive nature of the contract; and the manner and setting in which the contract
was formed, including whether each party had a reasonable opportunity to
understand the terms of the contract. *Id.,* at syl. pt. 20.

Substantive unconscionability involves unfairness in the terms of the
contract itself, and arises when a contract term is so one-sided that it has an overly
harsh effect on the disadvantaged party. *Id.*, at syl. pt. 19, The factors to be
weighed in assessing substantive unconscionability vary with the content of the
agreement, but generally, the commercial reasonableness of the contract terms, the
purpose and effect of the terms, the allocation of the risks between the parties, and
public policy concerns should be considered. *Id.* Gross inadequacy in bargaining
power, together with terms unreasonably favorable to the stronger party, may
confirm that the transaction involved elements of deception or compulsion or may
show that the weaker party had no real and meaningful alternative, or did not in
fact assent or appear to assent to the unfair terms. *Quicken Loans, Inc. v. Brown*,

35

2012 WL 5897495 at *13-14 (W.Va. November 21, 2012) (internal citations omitted).

Paragraph 19 of the Lease, as Chesapeake seeks to apply it, is both procedurally and substantively unconscionable. The Plaintiff is a high school graduate with no background in business or prior experience in oil and gas leasing. (Brown Dep. 5:15 - 7:7, J.A., 232-33).  Further, the language at issue is in the last sentence of Paragraph 19 which is on the third page of a three (3) page single spaced document in a small font. (Lease, ¶ 19, J.A., 34). Moreover, the purported extension clause does not follow the form of typical clauses providing for lease extensions and is not written in clear language. (Docket Entry #23-3, Report of Expert Chris Whinery, Docket, ¶¶ 10-17).

Despite the fact that Chesapeake maintains that Paragraph 19 pertains to the term of the Lease, it is not contained in paragraph 2, the only other paragraph dealing with the length of the term. (Lease, ¶ 2, J.A., 32). Additionally, at the time of the signing of the Lease, it was represented by the lessee's leasing agent to Ms. Brown, who was in dire straits financially, that the Lease could be renegotiated at the end of the primary term. (Brown Dep., 8:12-9:10; 12:12-21; 13:10-17, J.A., 233-34). The leasing agent also told Ms. Brown that he was in such a hurry that she did not have the chance to read the entire Lease while he was there. (Brown

Dep. 11:11-16, J.A., 234). All of the elements necessary to establish that the Lease was procedurally unconscionable and deceptive are present in this case.

Further, Paragraph 19, as Chesapeake seeks to apply, is procedurally unconscionable because there was no meeting of the minds with regard to Chesapeake's interpretation. Chesapeake's entire case rests on its assertion that it had a unilateral right to extend the term of the Lease for an additional five (5) years by paying the same consideration it had paid five (5) years earlier. Chesapeake bases this assertion solely upon the language of Paragraph 19, which as discussed above, is far from clear. Based upon Ms. Brown's deposition testimony, there is a clear lack of mutuality in regard to the term of the Lease. (Brown Dep. 9:4-10; 12:17-21; 16:11-21; 19:6-11; 29:3-5; 34:22-35:3, J.A., 233-36, 238-40) What Ms. Brown understood in regard to the term of the Lease, and what Chesapeake asserts in regard to the term are diametrically opposed.

Turning to the substantive aspects of the agreement, Paragraph 19, as Chesapeake seeks to apply, is unfair and commercially unreasonable. Under Chesapeake's application, the term of the Lease will be extended for an additional five (5) years and Ms. Brown will be forced to accept market rates from five (5) years ago. The only time Chesapeake would not choose to "extend" the Lease under previous markets rates and choose to exercise its purported second option to

37

"renew under similar terms a like lease" is when the market rates decrease. It is hard to imagine a more one-sided provision.

Allowing Chesapeake the option of obtaining the lower of two rates creates a commercially unreasonable provision which only benefits Chesapeake, and to which Ms. Brown would never have knowingly agreed. (Brown Dep. 20:4, J.A., 236). Therefore, Paragraph 19, as Chesapeake interprets it, is so one-sided as to create an unconscionable result, and the District Court erred in failing to address Ms. Brown's arguments regarding unconscionability.

### B.    Paragraph 19 of the Lease, as Chesapeake seeks to apply it, violates West Virginia public policy.

West Virginia public policy requires that Paragraph 19 not be interpreted as Chesapeake requests. Enforcement of the Lease as Chesapeake proposes is grossly unfair to Ms. Brown as well as to the numerous other persons subject to the same lease provision.

Oil and gas leasing has dramatically increased throughout West Virginia over the past few years due to the advent of hydraulic fracturing in the region. The practice of including deceptively vague provisions in oil and gas leases and permitting leasing agents to inform landowners of their terms, only to reinterpret the provisions to find a more favorable meaning must be deterred. The oil and gas companies have the knowledge and capabilities to draft clear and unambiguous leases. The oil and gas companies likewise have the ability to control what their

38

agents say in order to secure the execution of a lease. As the West Virginia

Supreme Court has noted:

> [T]hose engaged in the production of oil send agents armed with printed leases to solicit leases, and they take leases for great areas, and they are forms already prepared, and the people in many instances know little of them, are inexperienced in oil operations, and are without legal advice. They rely on the agent.

*Bettman v. Harness,* 42 W.Va. 433, 448, 26 S.E. 271, 276 (1896).

West Virginia public policy mandates that provisions in oil and gas leases

must not be construed in such a one-sided way as to place the landowner at a

further disadvantage. The landowners in West Virginia are farmers and coal miners

that are not trained in the niceties of the law. Applying Paragraph 19 as

Chesapeake requests, will permit oil and gas companies to draft vague language

and swindle landowners into signing unfavorable leases.

## III.    THE EXTRINSIC EVIDENCE OVERWHELMINGLY FAVORS MS. BROWN'S INTERPRETATION OF PARAGRAPH 19.

It is uncontested that Ms. Brown intended to enter into an oil and gas lease

for a term of five (5) years and that at the end of the five (5) year term she would

be free to renegotiate the Lease with market rate terms. (Brown Dep. 9:4-10, J.A.,

233). The Lessee's leasing agent, Donald Huffman, even informed Ms. Brown that

the Lease would only last for five (5) years and she would be free to renegotiate

the terms at the expiration of that five (5) year term. Id.

39

The proposed offer to "extend the primary term" of Mr. Reed's lease containing Paragraph 19 establishes that Chesapeake itself understood Paragraph 19 to require the negotiation of any extension of the leases containing Paragraph 19 in order to maintain the leases beyond the primary five (5) year term. (Chesapeake Offer to Extend Lease, J.A. 357-58).

The offers to "extend" leases like Mr. Reed's were withheld by Chesapeake during the initial discovery period, and were not discovered until after the briefing on the motions for summary judgment. (Brown Supplemental Brief, J.A., 367-68). In fact, the documents were discovered outside of the discovery process. Id. When the evidence came to light, Ms. Brown immediately filed her motion for leave to supplement her response in opposition to Chesapeake's motion for summary judgment to provide these undisclosed documents. (Brown Mot. for Leave to Supplement, J.A., 352-55).

The District Court erroneously denied her motion as moot.  As discussed more fully herein, Paragraph 19 is ambiguous, and therefore, the extrinsic evidence as to the parties' intent is relevant and admissible. Since Chesapeake concealed these documents from the Plaintiff during discovery, when they were expressly requested, the District Court erred in denying Ms. Brown's motion. (Brown Supplemental Brief, J.A., 367-68).

The offer "to extend" Mr. Reed's lease for one additional year, in exchange for an increased bonus payment and increased royalties establishes that Chesapeake did not interpret Paragraph 19 to provide it a unilateral right "to extend" the lease under the same terms as the original lease for a period of five (5) years as it now argues. Rather, Chesapeake correctly interpreted Paragraph 19 to require the negotiation of an agreement with the lessor based upon market rates. Mr. Reed rejected Chesapeake's offer "to extend" his lease because he believed the market rates to be higher at that time. (Affidavit of Larry Reed, ¶9, J.A. 399). After being unable to secure the required extension from Mr. Reed, Chesapeake purported to "extend" his lease pursuant to Paragraph 19 by paying the original bonus payment and royalty interest just as it did to Ms. Brown. (*Id.*, ¶¶ 7-12, J.A., 399-400).

Chesapeake's alleged interpretation of Paragraph 19 is merely a last-ditch effort to save leases that were about to expire by circumventing the express terms of the Lease and recording an extension of the Lease without even attempting to negotiate with the lessors so that it may avoid paying market rates for the bonus payment and royalties. As Chesapeake's offer to extend Mr. Reed's lease proves, neither Chesapeake nor Ms. Brown intended to grant Chesapeake such a right.

Since the extrinsic evidence regarding Ms. Brown's intent clearly proves that she intended to enter an agreement that she could renegotiate with market rates after the expiration of the five (5) year primary term so long as operations were not

41

commenced during that period, the ambiguous terms contained in Paragraph 19 should be construed against Chesapeake as the party who drafted the document. *Lee*, 721 S.E.2d at 57. As such, the District Court erred in failing to adopt Brown's interpretation. At a minimum, the District Court erred in resolving the parties' intent on summary judgment since "the parties' actual intention is a triable issue of fact." *Bear Brand Hosiery Co.*, 605 F.2d at 726.

Finally, and most importantly, to rule as the District Court did required it to ignore the reality that Chesapeake itself endorsed Ms. Brown's interpretation of Paragraph 19. The role of the Court is to adjudicate the truth – not ignore the truth. The District Court erred by failing to adjudicate the truth of the matters at issue on their merits, choosing instead to arbitrarily choose Chesapeake's interpretation of Paragraph 19 as the "most reasonable." By doing so, the District Court assisted Chesapeake in taking advantage of landowners throughout West Virginia.

## IV.    THE AMBIGUITIES CONTAINED IN PARAGRAPH 19 MUST BE CONSTRUED IN FAVOR OF MS. BROWN.

If the Court determines that the extrinsic evidence of the parties' intent does not clarify any ambiguities contained in Paragraph 19, the language must be construed against the drafter. *Energy Dev. Corp.*, 214 W.Va. at 586, 591 S.E.2d at 144. "The reason for this rule is to protect the party who did not choose the language from an unintended or unfair result." *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 63 (1995).

42

It is well-settled law in West Virginia that oil and gas leases will generally be liberally construed in favor of the lessor, and strictly against the lessee. *See e.g. Energy Dev. Corp.*, 214 W.Va. at 586, 591 S.E.2d at 144; *Boggs v. Camden-Clark Memorial Hosp. Corp.*, 225 W.Va. 300, 305, 693 S.E.2d 53, 58 (W.Va. 2010); *Moody v. Smoot Advertising Co.,* 98 W.Va. 261, 267, 126 S.E. 919, 920 (1925) ("It is well settled in West Virginia, where a lease is prepared by the lessee, and there is doubt as to its construction, it must be construed against the lessee *as the party who selected the terms and expressions used.*") (emphasis in original) (quoting *Bettman,* 42 W.Va. 433, 26 S.E. 271 (1896)).

It is likewise well-established that "[L]eases for oil and gas development should be construed most strongly against the lessee rather than the lessor." *Jackson v. Kent,* 106 W.Va. 37, 46, 145 S.E. 572, 575 (1928); *Energy Dev. Corp.*, 214 W.Va. at 586, 591 S.E.2d at 144; *Charlton v. Chevrolet Motor Co.,* 115 W.Va. 25, 174 S.E. 570 (1934); *Moore v. Johnson Serv. Co.,* 158 W.Va. 808, 219 S.E.2d 315 (1975); *United Fuel Gas Company v. Cabot,* 96 W.Va. 387, 122 S.E. 922 (1924); *Eclipse Oil Company v. South Penn Oil Company,* 47 W.Va. 84, 34 S.E. 923 (1899).

As the lessee to the Lease, Chesapeake is the drafter of the Lease. The Lease is an adhesive agreement between parties of unequal bargaining power. Chesapeake "drafted an ambiguous document, and [it] cannot now claim the

43

benefit of the doubt." *Mastrobuono*, 514 U.S. at 63. West Virginia law mandates that any doubt or uncertainty in the Lease should be liberally construed in favor of the Lessor, Ms. Brown, and against the Lessee, Chesapeake.

Consequently, Chesapeake's purported extension of the Lease is void and the Lease expired pursuant to its terms on April 11, 2012. Summary judgment may only be awarded at this stage in favor of Ms. Brown because the ambiguous provision of Paragraph 19 must be resolved in her favor. As such, the District Court's Order should be reversed and summary judgment awarded in favor of the Appellant, Vaunie Brown.

### CONCLUSION

For the foregoing reasons, Appellant, Vaunie Brown, respectfully requests that the judgment of the District Court be reversed and the case be remanded with instructions to enter judgment in her favor. Alternatively, the judgment of the District Court should be vacated and the case remanded for further proceedings.

November 19, 2012.

By /s/Carl A. Frankovitch
Of Counsel

M. Eric Frankovitch, Esq. (WV #4747)
Michael G. Simon, Esq. (WV #5551)
Kevin M. Pearl, Esq. (WV #8840)
Carl A. Frankovitch, Esq. (WV #12150)
FRANKOVITCH, ANETAKIS, COLANTONIO & SIMON
337 Penco Road
Weirton, WV  26062
(304) 723-4400

*Counsel for Appellant, Vaunie K. Brown*

# CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing brief complies with the type-volume limitations provided in Federal Rule of Appellate Procedure 32(a)(7)(B).  The foregoing brief contains 10,873 words of Times New Roman (14 point) proportional type.  The word processing software used to prepare this brief was Microsoft Word 2010.

By /s/Carl A. Frankovitch

Of Counsel

M. Eric Frankovitch, Esq. (WV #4747)
Michael G. Simon, Esq. (WV #5551)
Kevin M. Pearl, Esq. (WV #8840)
Carl A. Frankovitch, Esq. (WV #12150)
FRANKOVITCH, ANETAKIS, COLANTONIO & SIMON
337 Penco Road
Weirton, WV  26062
(304) 723-4400

# CERTIFICATE OF SERVICE

I hereby certify that on November 19, 2013, a copy of the foregoing *Brief of Appellant, Vaunie K. Brown* was filed with the Clerk of Court using the Court's CM/ECF system, which will send a notice of docket activity to the Appellant.


By /s/Carl A. Frankovitch
Of Counsel

M. Eric Frankovitch, Esq. (WV #4747)
Michael G. Simon, Esq. (WV #5551)
Kevin M. Pearl, Esq. (WV #8840)
Carl A. Frankovitch, Esq. (WV #12150)
FRANKOVITCH, ANETAKIS, COLANTONIO & SIMON
337 Penco Road
Weirton, WV  26062
(304) 723-4400